# In the United States Court of Federal Claims

No. 16-829
Filed: March 16, 2017

*******************************************
\*
LEVEL 3 COMMUNICATIONS, LLC,                \*
\*
     Plaintiff,                           \*
\*
v.                                          \*
\*
THE UNITED STATES,                          \*
\*
     Defendant,                           \*
\*
and                                         \*
\*
VERIZON DEUTSCHLAND GMBH,                    \*
\*
     Defendant-Intervenor.                \*
\*
*******************************************

Duty of Candor;
ABA Model Rule of Professional
Conduct 3.3 (Candor Toward The
Tribunal);
Rules of the United States Court
   of Federal Claims ("RCFC")
   11(b), (c) (Sanctions).

**Shelly Lynn Ewald**, Watt, Tieder, Hoffar, & Fitzgerald, LLP, McLean, Virginia, Counsel for Plaintiff.

**Douglas K. Mickle**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Jonathan D. Shaffer**, Smith Pachter McWhorter PLC, Tysons Corner, Virginia, Counsel for the Defendant-Intervenor.

### RULING REGARDING THE COURT'S DECEMBER 5, 2016 NOTICE FOR THE GOVERNMENT TO SHOW CAUSE WHY RCFC 11(b) WAS NOT VIOLATED

    This bid protest concerns a decision of the Defense Information Systems Agency ("DISA") to award a federal contract on March 8, 2016, for construction and maintenance of a Structured, High Availability Telecommunications Circuit between Wiesbaden, Germany and Arifjan, Kuwait to Verizon Deutschland GmbH ("Verizon") at a price that was $38.6 million more than the bid of Level 3 Communications, LLC ("Level 3"), the company that had been satisfactorily performing this work under a prior contract for several years.

On December 5, 2016, the court entered an injunction to prohibit the Government from allowing Verizon to perform work under this contract and ordered that DISA's files in this matter be produced to the Inspector General of the Department of Defense for further investigation, because lawyers from the Department of Justice and DISA informed the court, both in writing and at oral argument, that performance on the contract awarded to Verizon would not begin until December 1, 2016. *See Level 3 Communications, LLC, v. United States*, 129 Fed. Cl. 487 (2016). In fact, performance began on June 29, 2016, prior to the filing of this bid protest before the United States Court of Federal Claims and DISA "accepted" a completed telecommunications circuit on November 1, 2016. *Id.* at 494. Therefore, the court's December 5, 2016 Memorandum Opinion also ordered the Government to show cause "why the Government's written and oral representations to the court that performance of the contract with Verizon would not begin until December 1, 2016, does not violate Rule 11(b) of the United States Court of Federal Claims." *Id.* at 509.

On March 2, 2017, the Government advised the court that DISA was "in the midst of taking corrective action in order to correct the deficiencies identified in the [c]ourt's December 5, 2016opinion," and "is anticipating receiving revised quotes from original offerors, on, or about April 3, 2017." ECF No. 66 at 2.

A complete discussion of *all* the relevant facts regarding the court's Order to Show Cause follow.

## I.    FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND.[1]

On August 28, 2015, DISA issued Solicitation HC1021-15-T-3033 ("the Solicitation") to procure a STM 64, AU4 Structured, High Availability Telecommunications Circuit ("the circuit") between Wiesbaden, Germany and Arifjan, Kuwait, with an original service date of November 30, 2015. AR Tab 5, at 150. After amendments to the Solicitation, the service date was revised to May 2, 2016. AR Tab 7, at 271.

On July 12, 2016, Level 3 filed, under seal, a Complaint ("Compl.") in the United States Court of Federal Claims. ECF No. 1. On that same day, Level 3 also filed: a Motion For Preliminary Injunction; a Memorandum In Support Of Motion For A Preliminary Injunction; a Motion For Protective Order; a Motion To Seal The Complaint And Memorandum In Support Of Motion For A Preliminary Injunction; a Notice Of Related Case(s) (representing that Level 3 was unaware of any related cases pending before the court); and a corporate Disclosure Statement. ECF Nos. 5–6, 8–11.

On July 20, 2016, the Government filed, under seal, an Opposition To Level 3's Motion For A Preliminary Injunction And Appendix. ECF No. 27. That same day, the Government also filed, under seal, the Administrative Record. ECF No. 28. On July 22, 2016, Level 3 filed, under seal, a Brief In Reply To the Government's Opposition To Plaintiff's Motion For A Preliminary Injunction and attached the July 21, 2016 Declaration of John Shuttleworth, Level 3's Senior

---

[1] The facts discussed herein are partially derived from the July 20, 2016 Administrative Record ("AR Tabs 1–31," at 1–1253).

Director of Sales Engineers and the July 21, 2016 Declaration of Robert A. Crinks, President of 89Degree Networks, LLC.  ECF No. 29.

On August 1, 2016, the court convened a telephone status conference to discuss the status of the March 8, 2016 contract between DISA and Verizon.  ECF No. 34 ("8/1/16 TR 1–29"). During that telephone conference, the Government advised the court that the Contracting Officer ("CO") lifted a stop work order on June 28, 2016, after the Government Accountability Office ("GAO") denied Level 3's protest to that agency and established a new "service date."  8/1/16 TR at 5.  On August 3, 2016, the court issued an order setting dates for the parties to file cross-motions for judgment on the administrative record and scheduling an Oral Argument on the parties' motions at the National Courts Building in Washington, D.C. at 2:30 p.m. EST for September 15, 2016.  ECF No. 32.

On August 11, 2016, Level 3 filed, under seal, a Motion For Judgment On The Administrative Record And For Permanent Injunction and attached a Memorandum Of Law In Support.  ECF No. 35.

On August 23, 2016, the Government filed, under seal, a Cross Motion And Response To Plaintiff's August 11, 2016 Motion For Judgment On The Administrative Record, wherein the Government changed its prior position and affirmatively represented that Verizon would not begin performance until December 1, 2016:

> In contrast to Level 3's failure to put forward any claim of irreparable harm, the Government would be significantly harmed if the Court enters an injunction preventing ***Verizon from proceeding with preparation for its contract so that it can begin performance on December 1, 2016***.

ECF No. 36 at 25 (emphasis and bold added).  .

On August 23, 2016, Verizon also filed, under seal, a Response To Level 3's August 11, 2016 Motion For Judgment On The Administrative Record And Cross Motion For Judgment On The Administrative Record.  ECF No. 37.

On September 15, 2016, the court convened an oral argument on the parties' Cross Motions For Judgment On The Administrative Record.  ECF No. 42  ("9/15/16 TR 1–58").[2]  During that argument, the court asked the Government's counsel about the status of the contract:

> THE COURT:  So tell me what's happening right now. Verizon has the contract. What are they doing? . . .
>
> GOVERNMENT'S COUNSEL:  No, I know, Your Honor. Verizon, right now, is ***preparing to perform on December 1st.***

---

[2] A delegation of visiting judges from Argentina, sponsored by the Administrative Office of the United States Courts, led by the Honorable Leo M. Gordon, of the United States Court of International Trade, attended this argument, with consent of the parties.

THE COURT: *What does "preparing to perform" mean?*

GOVERNMENT'S COUNSEL: Well, they've got to set the circuit up—

THE COURT: They're sitting in Germany doing . . . what?

GOVERNMENT'S COUNSEL: *They've got to set the circuit up and test it and things like that and make sure it works.*

THE COURT: And how do they do that?

GOVERNMENT'S COUNSEL: *They get their subcontracts in place, all their permits in place, things like that, and make sure that they're ready on December 1st.*

THE COURT: They haven't really done anything yet?

GOVERNMENT'S COUNSEL: Well, they would *enter into subcontracts and make sure that they have the circuit and the size that we requested.*

THE COURT: So who's maintaining [the circuit] now? [Is Level 3?]

LEVEL 3'S COUNSEL: Your Honor, the circuits—the telecommunication circuits are—have been installed. They're physically installed for years.

THE COURT: Right.

LEVEL 3'S COUNSEL: They're being maintained by local telecommunication service providers in those countries. You then subcontract—

THE COURT: Right.

GOVERNMENT'S COUNSEL: The contract with the Government then bundles those together in a subcontract and provides them end-to-end throughout—through the countries.

THE COURT: So if I enjoin this case and send it back to the agency to figure out what they want to do about it, what happens? Where's the harm? Things are going along quite nicely?

GOVERNMENT'S COUNSEL: Well, right now, they're going to be—*Verizon will be ready on December 1st to perform and provide the larger*—

THE COURT: Verizon will be doing what?

GOVERNMENT'S COUNSEL: *Verizon will be ready on December 1st.*

THE COURT: *Ready to do what?*

GOVERNMENT'S COUNSEL: ***To provide this larger circuit than the one that the military currently leases from—***

THE COURT:  Well, they haven't built anything yet[?]

GOVERNMENT'S COUNSEL: ***They're in the process of having it prepared so it will be ready on December 1st.***

THE COURT: ***What are they preparing?***

GOVERNMENT'S COUNSEL: ***They're entering into the subcontracts that they need to have the circuit in place. And the permits and everything else that they need.*** So if you were to enjoin it, then it's not—the Government is going to have to take whatever action you deem necessary, but if they were to have to, say, cancel that contract and enter into discussions with all the offerors, then that's going to take time and then there'll be a new award; there may be a protest. And then at some point . . . they would get the larger circuit, ***but it's not going to be on December 1st, Your Honor***.

9/15/16 TR at 40–43 (emphasis and bold added).

*     *     *

THE COURT:  I don't like issuing injunctions. I really don't. I typically don't like doing it in a military context, but this is a lot of money, and . . . I can't get my arms around what's going on here.

9/15/16 TR at 45.

From September 15, 2016 until November 9, 2016, the Government had no additional communication with the court.  On November 9, 2016, the court's Law Clerk sent an e-mail to the parties to inquire whether Verizon still intended to commence performance on December 1, 2016.  ECF No. 52.  On November 10, 2016, the Government responded that: **"*Verizon was able to complete the circuit ahead of schedule and the Government accepted the circuit and began using the circuit on November 1, 2016.*"**  ECF No. 52 (emphasis and bold added).

On November 14, 2016, the court convened a hearing to ascertain the precise status of Verizon's performance under the March 8, 2016 contract.  ECF No. 48 ("11/14/16 TR").

THE COURT:  So would the Government give us a representation as to what has been done since our September 15th, 2016, conference?

GOVERNMENT'S COUNSEL:  Your Honor, do you want me to come up there or—

THE COURT:  I think that would be a good idea.

GOVERNMENT'S COUNSEL:  Good afternoon, Your Honor.

5

THE COURT:  Good afternoon.

GOVERNMENT'S COUNSEL:  The deadline for Verizon to complete the circuit under their lead time that they had in their bid was 150 days. That would have led to December 1, ***but they completed the circuit early***—

THE COURT:  I can't hear you.

GOVERNMENT'S COUNSEL:  I'm sorry. They completed the circuit early, and it was turned over to the Government on November 1st.

THE COURT:  Um-hum.

GOVERNMENT'S COUNSEL:  And it was approximately one month early. And the Government accepted the circuit. ***It's in the process of attaching encryption devices to the circuit, and we will start using it any day now***.

THE COURT:  And how much do you owe Verizon at this point?

GOVERNMENT'S COUNSEL:  I don't know the answer to that, but they would have to—

THE COURT:  Why don't you know the answer?

GOVERNMENT'S COUNSEL:  I—I don't know the answer to that, Your Honor, but they would have to—obviously they would have to pay for the preparation in setting up the circuit, and at this point they would have to pay for at least one month.

THE COURT:  During our September 15th hearing, on page 40 of the transcript, the [c]ourt asked you:

> THE COURT:  "So tell me what's happening now.  Verizon has the contract. What are they doing?"

You answered:

> GOVERNMENT'S COUNSEL:  "Verizon, right now, *is preparing to perform on December 1st.*"

The [c]ourt [then] asked you:

> THE COURT:  "What does 'preparing to perform' mean?"

You answered:

> GOVERNMENT'S COUNSEL:  "Well, they've got to set the circuit up—"

6

THE COURT:  "They're setting up in Germany or doing what?"

GOVERNMENT'S COUNSEL:  "They've got to set the circuit up and test it and things like that and make sure it works."

THE COURT:  "And how do they do that?"

GOVERNMENT'S COUNSEL:  ***They get their subcontracts in place, all their permits in place, things like that, and make sure they're ready on December 1st.***"

The [c]ourt asked you:

THE COURT:  "They haven't really done anything yet?"

The Government answered:

GOVERNMENT'S COUNSEL:  ***Well, they would have to enter into subcontracts and make sure that they have the circuit and the size we requested.***"

11/14/16 TR at 4–6.

\*       \*       \*

The November 14, 2016 hearing resumed:

THE COURT:  I take it that [Verizon] went on ahead and got their subcontracts and permits in place. That's correct?

GOVERNMENT'S COUNSEL: That's correct.

THE COURT:  Okay. And then what else have they done since then?

GOVERNMENT'S COUNSEL:  ***They have done everything they needed to do to have the circuit completed***—

THE COURT:  Define what—the "everything else" they've done in specificity.

GOVERNMENT'S COUNSEL:  Well, they've—they've—***I'm not aware of all the details***, but they—

THE COURT:  Why not?

GOVERNMENT'S COUNSEL:  I—

THE COURT:  Why aren't you aware of the details?

7

GOVERNMENT'S COUNSEL:    Those things are handled by the [C]ontracting [O]fficer, Your Honor.

THE COURT:  They don't feel that there is any need to inform . . . Government's counsel since the matter is pending before the [c]ourt?

GOVERNMENT'S COUNSEL: *Well, they did inform me that the circuit was ready and that they had accepted it.*

THE COURT:  Did that come as a surprise to you?

GOVERNMENT'S COUNSEL:  That was on November 1st. They—Your Honor, there was—there was always a possibility that they could complete it quicker.

    If I—Your Honor, if I should have—

THE COURT:  [On September 15, 2016 the] Government said to me:

    GOVERNMENT'S COUNSEL:    "Verizon will be ready on December 1 *to perform* and provide the larger—"

Then I said:

    THE COURT:  "Verizon will be doing what?

    GOVERNMENT'S COUNSEL:  "Verizon will be ready on December 1st."

Then I said:

    THE COURT:  "Ready to do what?"

And the Government said:

    GOVERNMENT'S COUNSEL:  "To provide this larger circuit than the one the military currently leases from."

    THE COURT:  "Well they haven't built anything yet."

The Government responded:

    GOVERNMENT'S COUNSEL:  *"They're in the process of having it prepared so it will be ready on December the 1st."*

I said:

    THE COURT:  "What are they preparing?"

8

The Government said:

> GOVERNMENT'S COUNSEL: "They're entering into the subcontracts that they need to have the circuit in place. And the permits and everything else that they need.
>
> So if you were going to enjoin it . . . then it's not—the Government is going to have to take whatever action you deem necessary, but if they were to have to, say, cancel that contract and enter into discussions with all the offerors, then that's going to take time and then there'll be a new award, there may be a protest. And then at some point they would get a bigger—they would get a larger circuit, but it's not going to be on December 1st, Your Honor."

11/14/16 TR at 6–8.

*     *     *

> THE COURT:  Is there anything else urgent that I need to know?
>
> GOVERNMENT'S COUNSEL:  No, that's it, Your Honor.

9/15/16 TR at 47.

*     *     *

The court continued to inquire at the November 14, 2016 hearing:

> THE COURT:  It was the [c]ourt's impression that what I allowed [the Government] to do until the decision [on Level 3's July 12, 2016 bid protest] was [issued] was to . . . *hire subcontractors to get ready to perform on December 1st.* It appears [DISA] went on ahead and performed in any event.
>
> It also appears that the Government either wasn't informed by [DISA] or was, but in any event, *you knew on November 1st, and you did not inform the [c]ourt, nor did [DISA].*  I assume you did not inform the Plaintiff.
>
> Is that correct?
>
> GOVERNMENT'S COUNSEL:  That's true, Your Honor.
>
> LEVEL 3'S COUNSEL:  That's correct, Your Honor.[3]

---

[3] But, on March 1, 2017, Level 3's counsel submitted a Declaration stating:  "[M]y client and I were aware that contract performance was ongoing and that DISA lifted the stop work order on or about June 29, 2016[.]"  ECF No. 64.  The court assumes that Level 3's counsel's "corrected position" reflects the fact that Level 3 subsequently has been afforded an opportunity to be considered for a new contract to continue the work initiated by Verizon.

THE COURT:  Okay. Is there any explanation you have for your conduct and that of the Government in the case?

GOVERNMENT'S COUNSEL:  Well, it's—just maybe I should clarify on the facts a little bit. These are existing lines. They don't lay out the lines. The lines are there. They have to obtain subcontracts and things so they can use the lines to get the circuit set up, but there isn't—they are not putting in new lines from Germany to Kuwait.

As far as what—*I was told on November 1st that the Government* —that the circuit was complete and that the Government would be modifying the contract to accept it on that day. To the extent that I should have informed the [c]ourt, then I apologize, but I don't see how it affects your ability to make a ruling in this case, if that's your concern, Your Honor.

THE COURT:  Well, it won't, because I am going to issue a TRO today, so there will be no additional work on this contract until the [c]ourt issues an opinion. That's number one.

Number two, I am going to submit this matter to the [United State Court of Federal Claims'] Committee and I am going to recommend sanctions, Rule 11 sanctions against the Government, and to preclude you from practicing before this Court, the entire Court, not just me, the entire Court.

In addition, I am going to contemplate awarding the Plaintiff whatever lawyers' fees they've [incurred to date]. I have never had a situation before where I felt that the Government misinformed the [c]ourt.

And in addition to the transcript, since you may be concerned about the scope of Rule 11, the Government made a representation to me on August 23rd, 19—2016, in writing, and it says:

> In contrast to Level 3's failure to put forward any claim of irreparable harm, the Government would be significantly harmed if the Court enters an injunction prohibiting Verizon from proceeding with preparation for its contract *so that it can begin performance on [December] 1, 2016*.
>
> *I didn't enjoin [DISA] from preparation, as it was described to me, but . . . I was under the impression—and I think the transcript is pretty clear—that there would be no performance under the contract until December 1. There has been performance under the contract, contrary to what the [Government] said to me in writing and contrary to what [was] represented—what you represented to the [c]ourt on at least September 15th, 2016.*
>
> The [c]ourt will issue the TRO today. You can inform [DISA]. I am going to consider what other sanctions might be available against [DISA]. I would like to be informed of who . . . called you and was responsible, who was your client contact in [DISA].

*       *       *

10

> THE COURT:   I have never seen anything like this happen. If I had done this
> when I was in the Justice Department, I would have been fired by my Chief.

11/14/16 TR at 9–12 (emphasis and bold added).

On that same day, the court issued a Memorandum Opinion And Temporary Restraining Order, prohibiting DISA from allowing Verizon to continue performing under the March 8, 2016 Contract.  *See Level 3 Communications, LLC v. United States*, 129 Fed. Cl. 295, 299–300 (2016).

On November 18, 2016, the Government filed a Status Report, under seal, to inform the court about the work that Verizon performed to date and the amount that has been paid or is due to Verizon.  ECF No. 50.  In an attached declaration, the CO stated that Verizon began the "provisioning process to install the circuit per the contract," on June 29, 2016, after GAO issued its ruling, and that Verizon completed work on the circuit on November 1, 2016.  ECF No. 50-1 at ¶¶ 5–6.  In addition, the CO stated that, under Verizon's offer, the set up process carried a [dollar amount] "non-recurring cost," that would be billed to DISA.  ECF No. 50-1 at ¶ 13.  Since DISA accepted the circuit on November 1, 2016, the court was informed that Verizon apparently was owed [a dollar amount] for one month of service.  ECF No 50-1 at ¶ 13.

On November 21, 2016, the Government submitted an additional Status Report, confirming that Verizon had commenced "performance" under the March 8, 2016 Contract on June 29, 2016. ECF No. 51 at 7.

## II.   JURISDICTION.

In the December 5, 2016 Memorandum Opinion, the court determined that: the claims alleged in the September 29, 2016 Amended Complaint supported the United States Court of Federal Claims exercise of jurisdiction to adjudicate those claims and Level 3 had standing to seek that adjudication.  *See Level 3 Communications*, 129 Fed. Cl. at 495–96.

## III.   DISCUSSION.

### A.     The Court's December 5, 2016 Order To Show Cause.

Rule of the United States Court of Federal Claims ("RCFC") 11(c)(3) provides,

> (3) On the Court's Initiative.  On its own, the court may order an attorney . . . or
> party to show cause why conduct specifically described in the order has not violated
> RCFC 11(b).

RCFC 11(c)(3).

On December 5, 2016, the court ordered the Government to show cause "why the Government's written and oral representations to the court that performance of the contract with Verizon would not commence until December 1, 2016 does not violate RCFC 11(b)."  *See Level 3 Communications*, 129 Fed. Cl. at 509.

11

**B.     The Government's Response To The Court's December 5, 2016 Order To Show Cause.**

On January 17, 2017, the Government, under seal, filed a Response to the court's December 5, 2016 Show Cause Order, together with an Appendix including: (1) transcript excerpts from the August 1, 2016 Telephone Status Conference; (2) transcript excerpts from the September 15, 2016 Oral Argument; (3) the transcript of the November 14, 2016 Status Conference; and (4) the Declaration of the Government's counsel.  ECF No. 62.[4]  The Government argues that it did not violate RCFC 11(b) for four reasons:

- "[The Government's August 23, 2016] Motion and Oral Statement Must Be Viewed As A Whole."  ECF No. 62 at ii, 10–14;

- "[The Government's] Factual Contentions Were Accurate And Supported By A Declaration."  ECF No. 62 at ii, 14–15;

- "The Purpose of [The Government's] Statement Was To Demonstrate That An Injunction Would Delay The Completion Of The Circuit."  ECF No. 62 at ii, 15–16; and

- "At The August 1, 2016 Hearing [, The Government] Stated That Performance of The Contract Was Ongoing."  ECF No. 62 at ii, 16–17.

**C.     The Court's Determination.**

**1.     The Relevant Rules.**

RCFC 11(b) requires that,

(b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[4] No information or argument subject to the July 13, 2016 Protective Order in this case (ECF No. 14) supports the Government's *sua sponte* decision to file the January 17, 2017 Response, under seal.  *See In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356–60 (Fed. Cir. 2011) (explaining that "the presumption of public access to judicial proceedings and records is strong" and "parties must confine their confidentiality markings to information covered by a protective order").

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

RCFC 11(b)(1)–(4).

In addition, attorneys have a duty of candor towards the court. *See* MODEL RULES OF PROF'L CONDUCT r. 3.3 ("Candor Toward the Tribunal"). The duty of candor includes a "continuing duty to inform the Court of any developments that may conceivably affect the outcome of the litigation." *See Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)).

## 2.    Controlling Precedent.

In *Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997), the United States Court of Appeals for the Federal Circuit was presented with a case where a patent concerning a method of micro-optical imaging allegedly was infringed by the United States Postal Service's use of bar code scanners, manufactured by Hewlett-Packard. *Id*. at 782. The United States Court of Federal Claims granted, in part, a Joint Motion For Partial Summary Judgment on non-infringement, filed by the Government and Hewlett-Packard. *Id.* The plaintiff stipulated thereafter that the Government never purchased the alleged accused devices from Hewlett-Packard. *Id*. Although, Hewlett-Packard was dismissed as a party, it subsequently moved for sanctions against plaintiff for failure to exercise "a duty to analyze the patent claims and determine whether [plaintiff's] assertions were plausible." *Id*. at 783. The United States Court of Federal Claims concluded that although plaintiff's pre-filing examination was "minimal," it was not sanctionable. *Id.* Our appellate court, however, vacated and remanded that decision citing RCFC 11's requirement that the plaintiff and plaintiff's attorneys make a "reasonable inquiry" to determine whether the complaint was grounded in fact. *Id*. at 784. [5]

---

[5] The United States Court of Appeals for the Federal Circuit has issued a number of cases governing Federal Rule of Civil Procedure 11 sanctions in patent cases. *See, e.g*., *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp*., 831 F.3d 1350, 1365–66 (Fed. Cir. 2016) (affirming district court's determination that Rule 11 sanctions were inappropriate when patentee's proffered claim construction was not frivolous); *Source Vagabond Systems Ltd. v. Hydrapak, Inc*., 753 F.3d 1291, 1303 (Fed. Cir. 2014) (affirming Rule 11 sanctions for frivolous claim construction arguments and failure to conduct reasonable pre-suit analysis); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368–69 (Fed. Cir. 2012) (holding that a district court abused its discretion by not entering Rule 11 sanctions, based upon a frivolous claim construction); *Eon-Net*

In the unpublished decision, *Miller–Holzwarth, Inc. v. United States*, 232 F.3d 905 (Table), 2000 WL 291728 (Fed. Cir. Feb. 29, 2000), the United States Court of Appeals for the Federal Circuit reviewed an appeal of a bid protest case, where the trial judge imposed sanctions on the plaintiff for misleading the court about remarks made by a government official. *Id*. at *5.

Therein, our appellate court observed that:

> Candor to the court in pleadings *and* declarations is vital to judicial economy and accuracy, as well as assuring fairness to the parties. [But] for purposes of review of the award of sanctions that clear error has not been shown in the trial court's finding that [plaintiff and its counsel] were not candid, in that incomplete statements were made [in a written pleading] . . . nevertheless, imposition of Rule 11 sanctions require proof that a pleading was filed in violation of one of the three elements of the rule. While we do not condone questionable litigation tactics, neither do we discern the requisite proof that any elements of the rule was proven by a preponderance of the evidence to have been violated here.

*Id*. at *3 (emphasis added).

In *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003), the United States Court of Appeals for the Federal Circuit considered a case where the United States Court of International Trade "formally reprimanded" a Department of Justice attorney for misquoting and failing to quote fully from two judicial opinions in a motion for reconsideration. *Id*. at 1350. On appeal, our appellate court held that the Government's counsel "violated Rule 11 because, in quoting from and citing published opinions [the Government's counsel] distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them, and failed to show that [the Government's counsel] and not the court had supplied the emphasis in one of them." *Id*. at 1357. Consequently, the United States Court of Appeals for the Federal Circuit held that, "*[w]ithout regard to whether [the Government's counsel's] conduct violated Rule 11, the sanction [of an unpublished reprimand decision] imposed . . . would have been sustained under the inherent power of the court to control and specify the standards of lawyers who appear before it.*" *Id*. at 1357–58 (emphasis added).

In *1-10 Industry Associates, LLC v. United States*, 528 F.3d 859 (Fed. Cir. 2008), the United States Court of Appeals for the Federal Circuit reversed and remanded the United States Court of Federal Claims for determining that a Department of Justice attorney breached the duty of candor, by misleading the court about the date on which the Government learned the facts on which a counterclaim was based *and* because the same Government attorney, in a different proceeding before the same trial judge, attempted to introduce a document not previously identified. *Id*. at 861, 866. Our appellate court reversed the trial judge for failing to provide notice in the Motion To Show Cause specifically to inform the Government attorney that his conduct in a prior trial would be considered in determining sanctions in the subsequent proceeding. *Id*. at 866–69. The second basis for reversal was that the Government's attorney could not be

---

*LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (affirming Rule 11 sanctions for failure to conduct reasonable pre-suit analysis).

"sanctioned for omitting a discussion of the same uncontested fact that had been placed in the record [by plaintiff]." *Id*. at 869–70.

### 3. The Court's Ruling.

In this case, the Government's first explanation, as to why RCFC 11(b) sanctions are not warranted, is that the Government's August 23, 2016 Response to Plaintiff's August 11, 2016 Motion For Judgment On The Administrative Record And Cross Motion and the Government's September 15, 2016 oral statement "Must Be Viewed As A Whole." Gov't Resp. at ii, 10–14. In support, the Government cites two non-precedential decisions from another jurisdiction and a 1989 text for the proposition that: "the focus of . . . rule [11] is the court paper as a whole, not individual phrases or sentences construed separately or taken out of context." Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D) at 133–34 (1989); *see also Young v. City of Providence ex. rel Napolitano*, 404 F.3d 33, 41 (1st Cir. 2005) ("The general rule is that statements must be taken in context, and that related parts of a document must be taken together." (internal citations omitted)). None of these sources are helpful to the Government.

The United States Court of Appeals for the First Circuit in *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464 (1st Cir. 1993) reversed a trial court's decision to impose Rule 11 sanctions for failing to make a "reasonable inquiry." Gov't Resp. at 11. In this case, however, the court made that inquiry, therefore complying with RCFC 11(c), in the December 5, 2016 Memorandum Opinion. *See* 129 Fed. Cl. at 509. In addition, in *Navarro-Ayala v. Hernandez-Colon*, that federal appellate court found that the plaintiff's written motion contained "no significant false statements" and was "not literally false." 3 F.3d at 467. In this case, however, the Government's August 23, 2016 Cross Motion And Response To Level 3's August 23, 2016 Motion For Judgment On The Administrative Record affirmatively represented that Verizon would "***begin performance on December 1, 2016***." ECF No. 36 at 25 (emphasis and bold added).[6] As such, the Government's August 23, 2016 Response was a "*significant false statement*." *Navarro-Ayala*, 3 F.3d. at 467. Nor was the Government's August 23, 2016 written representation to the court an "isolated factual error," as the colloquy between the court and Government's counsel at the September 15, 2016 oral argument evidences. 9/15/16 TR at 40–43.

Likewise, the Government's statement of the "Proceedings Before This Court" in its January 17, 2017 Response, *omits any reference to the September 15, 2016 Oral Argument* (ECF No. 62 at 2–6), but instead represents that "[i]t was not until the November 14, 2016 hearing that the [Government] realized that a misunderstanding had developed between the parties and the court." Gov't Resp. at 6 (citing A27 Bigler Decl. at ¶¶ 4–5). In addition, the Government's prior misrepresentation was exacerbated by the Government's failure to inform the court—at least on November 1, 2016—that Verizon completed work on the circuit and turned it over to DISA. 11/14/16 TR at 9–10; *see also Town of Tiverton*, 469 U.S. at 240 ("It is appropriate to remind

---

[6] The Government argues that, on page 25 of the Government's August 23, 2016 Response, "[i]f the [c]ourt were to enter an injunction that prohibited from Verizon from continuing contract performance, Verizon would be unable to provide the new circuit on December 1, 2016." ECF No. 36 at 25. This may be true, but it is not inconsistent with an earlier statement in the same brief that Verizon would "begin performance on December 1, 2016." ECF No. 36 at 25.

15

counsel that they have a 'continuing duty to inform the Court of any developments that may conceivably affect the outcome' of the litigation." (quoting *Fusari*, 419 U.S. at 391 (Burger, C.J., concurring))).

To place the Government's conduct in further context, it is important to understand that, in fiscal 2016 alone, approximately 120 bid protests were filed in the United States Court of Federal Claims. These cases take precedence over all other cases on the docket, because the complaint almost always demands issuance of a temporary and/or permanent injunction to prohibit the Government from performing work under a contract. In addition, as the Government was well aware, in fiscal 2016, the court operated with 10 active judges, instead of the 16 authorized. But even not all of those 10 active judges could accept bid protests, because they were in trial or for other administrative reasons. Therefore, it was not unusual for the judges available to accept bid protests to be assigned two and sometimes three or more bid protests in a month. It is also important to understand that the Administrative Record in bid protest cases is not made available to the plaintiff or the court for at least a week and sometimes longer; briefing usually does not follow for several additional weeks. Therefore, the court must rely on the Government's representation as to the precise status of contract performance to ascertain whether the circumstances warrant an injunction. If the Government will not voluntarily stay performance, the court is then faced with the dilemma of having to consider whether to issue an injunction, without a full record, to preserve plaintiff's ability potentially to be reconsidered and awarded the contract at issue. In this case, the court initially decided not to issue an injunction, because of the Government's representation that no ***significant work*** on the contract would take place before December 1, 2016. Therefore, the Government's written and oral representations "taken in context" and "taken as a whole" were not accurate. *See Young*, 404 F.3d at 41. The *most* important issue *at the time* of the Government's written and oral representations was whether a temporary or permanent injunction was warranted. As the transcript of the September 15, 2016 oral argument shows—if the only work that Verizon was doing was to "get their subcontracts in place, all their permits in place, things like that, and make sure they're ready on December 1st" ( 9/15/16 TR (Gov't Counsel) at 41)—then an injunction was not warranted. But, that representation was not accurate.

The Government's second explanation as to why sanctions are not warranted, in this case, is that the "Government's Factual Contentions Were Accurate And Supported By A Declaration." Gov't Resp. at ii, 14–15. Here, the Government relies on the July 15, 2016 unclassified Schmitt Declaration, that reported: "on 29 June 2016, the [C]ontracting [O]fficer lifted the stop work order and established new service date for STM–64 as 1 December 2016, based upon Verizon's lead time of 150 days to provide service." 7/15/16 Schmitt Decl. at ¶ 8. The fact that the CO established a new service date, "*as* 1 December 2016" is consistent with the Government's August 23, 2016 Response that Verizon would "begin performance on December 1, 2016," since some portion of the 150 days to prepare for performing the March 8, 2016 contract, *i.e.*, testing the circuit, hiring subcontractors and obtaining permits, would have taken place by December 1, 2016. 9/15/16 TR at 40–41 (Gov't Counsel: "[Verizon has] got to set the circuit up and test it . . . They get their subcontracts in place, all their permits in place, things like that[.]"). If that was true, it was reasonable for the court to assume that Verizon could not only commence contract performance on December 1, 2016, but also be able to complete that work *in* December 2016.

16

The Government's third explanation as to why sanctions are not warranted, in this case, is that the Government's August 23, 2016 representation that "Verizon would begin performance on December 1, 2016" was "to make the point that, if the court entered an injunction, the telecommunications circuit would not be ready by December 1, 2016." *Compare* ECF. No. 36 at 25 *with* Gov't Resp. at 15. In the court's judgment, based on all the circumstances and in context, the Government's August 23, 2016 representation that "Verizon would *begin performance* on December 1, 2016" (ECF No. 36 at 25) was made for the sole purpose of persuading the court not to enter an injunction, so that Verizon could continue and complete performance of the circuit, depriving Level 3 of the opportunity to do that work, and receive the [dollar amount] that the Government now owes Verizon. ECF No. 50 at ¶ 12.

The Government's fourth and final explanation as to why sanctions are not warranted, in this case, is that the court was advised on August 1, 2016, that the CO lifted the stop order on June 28, 2016, after the GAO denied Level 3's protest, and established a "new service date." ECF No. 62 at 16 (citing 8/1/16 TR at 5). It is true that "[the Government's] counsel could not be charged with misrepresenting a fact to the court when the court itself knew the true facts and thus could not have been misled by the less-than-clear assertions by the party subject to the sanctions order." *1-10 Industry Associates, LLC*, 528 F.3d at 868 (citing *Young*, 404 F.3d at 41 ). But, in this case, the Government's August 1, 2016 statement that the CO lifted the stay order and established a new service date was followed on August 23, 2016 by a written statement to the contrary—that Verizon "would begin performance on December 1, 2016" (ECF No. 36 at 25) and repeated at the September 15, 2016 oral argument, 9/15/16 TR at 40 (Gov't Counsel: "Verizon, right now, *is preparing to perform on December 1st*.") (emphasis and bold added). Therefore, it was reasonable for the court to rely on what appeared to be the Government's change in position, particularly since the transcript of the subsequent September 15, 2016 oral argument evidences that the court repeatedly asked the Government's counsel to define precisely what it meant by the term "preparing to perform" (9/15/16 TR at 40), and "what [is] Verizon preparing" (9/15/16 TR at 40).

RCFC 11(b) contains four prerequisites, before the court may impose a sanction. *See* RCFC 11(b)(1)–(4). In this case, the written and oral statements made by the Government to the court must be excused under RCFC 11(b)(3) and (4), under an "objective reasonableness standard." *See 1-10 Industry Assoc's*, 528 F.3d at 869 ("Other courts applying the objective reasonableness standard have pointed out that the test "is one of reasonableness under the circumstances."(quoting *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990))). This is so because, RCFC 11(b) provides that a factual contention need not have evidentiary support at the time it is made, provided that it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." If this is the standard, then it appears to the court that this Rule serves no purpose, since any savvy advocate can generate post-conduct evidence to "paper over" and justify a misrepresentation to the court. Fortunately the United States Supreme Court may have recognized the potential loopholes in Federal Rule of Procedure 11, when it held in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1990), that "where the conduct at issue is not covered by one of the other sanctioning provisions . . . a federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power . . . . [I]f[,] in the informed discretion of the court, neither the Statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50. In this case, in the court's judgment, considering the totality of

circumstances, and the context of the Government's statements, this is not a case where there was a "miscalculation of facts," as in *1-10 Industry Associates*, 528 F.3d at 870, but a breach of the duty of candor. *See Precision Specialty Metals*, 315 Fed. Cir. at 1357–58 ("Without regard to whether [the Government's counsel's] misconduct violated Rule 11, the sanction imposed upon [counsel] would have been sustainable under the inherent power to control and specify the standards of lawyers before it.").

## IV.   CONCLUSION.

For the aforesaid reasons, the court has determined that the Government did not violate RCFC 11(b), but violated the duty of candor to the court.  Mr. Douglas Mickle, the direct supervisor of the Government's counsel in this case, has appeared before the court in other cases, where Mr. Mickle's substantive expertise and professional conduct always has reflected the highest standard that the court expects from all counsel, most importantly the Government's counsel. Some forty-plus years ago, the court, as a GS-12 trial lawyer in the Department of Justice, was trained to be truthful, direct, and complete in all communications with federal judges. "First and always," in the words of my supervising chief.  Maybe times have changed.  Maybe not.  In any event, the court has determined to rely on Mr. Mickle's professional judgment as to whether Robert C. Bigler should receive an adverse report in his annual performance review or other actions to impress, not only on him, but on other Government lawyers who practice before the United States Court of Federal Claims and other federal courts, that the duty of candor matters.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**

18